IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MAMADOU BONTHORO DIALLO,

     Petitioner,

v.                                       No. 2:26-cv-00852-KG-GJF

DORA CASTRO, et al.,

     Respondents.

## **TEMPORARY RESTRAINING ORDER**

This matter is before the Court on Petitioner Mamadou Bonthoro Diallo's motion for a Temporary Restraining Order ("TRO") under Federal Rule of Procedure 65(a). *See* Doc. 2. For the reasons below, the Court grants the motion and orders the Government to release Petitioner.

### *I.*    *Background*

Petitioner, a native and citizen of Guinea, entered the United States without inspection on January 12, 2024. Doc. 1 at 7. Customs and Border Patrol ("CBP") agents arrested Petitioner and conducted a system check, confirming that Petitioner had no criminal history or outstanding warrants, and did not otherwise pose a threat to national security. *Id*. at 2. On January 13, 2024, the Department of Homeland Security ("DHS") initiated removal proceedings. *Id*. DHS released Petitioner on his own recognizance on January 15, 2024, after determining that Petitioner was neither a flight risk nor a danger to the community. *Id*. at 2–3. Following his release, Petitioner filed Form I-589 seeking asylum, withholding of removal, and protection under the Convention Against Torture. *Id*. at 7.

As a condition of release, Petitioner was required to attend check-ins with Immigration and Customs Enforcement ("ICE") and appear at all immigration court proceedings. *Id*. at 3.

1

Petitioner maintains he has fully complied with these conditions and has obtained employment authorization from United States Citizenship and Immigration Services.  *Id*.

On November 11, 2025, Petitioner appeared for a scheduled check-in with ICE agents. *Id*.  At the check-in, ICE rearrested Petitioner and revoked his order of supervised release.  *Id*. at 8.  Petitioner remains in detention at the Otero County Processing Center in Chaparral, New Mexico.  *Id*.

Petitioner filed a petition for writ of habeas corpus and a motion for a TRO and preliminary injunction, arguing that his redetention, without notice or a hearing, violates the Fifth Amendment's Due Process Clause.  Docs. 1 at 1, 2 at 2.  Petitioner seeks a TRO (1) ordering his immediate release from detention, (2) enjoining the Government from transferring him outside of New Mexico, (3) prohibiting the Government from rearresting or redetaining Petitioner absent evidence that Petitioner violated a condition of his supervised release, and (4) ordering the parties to file a joint status report informing the Court of Petitioner's release and any related custody developments.  Doc. 2 at 2.

## II.     *Standard of Review*

A TRO "preserve[s] the status quo [ante]" before a final decision on the merits. *Resolution Trust v. Cruce*, 972 F.2d 1195, 1198 (10th Cir. 1992).  The status quo is "the last peaceable uncontested status...before the dispute developed."  *Free the Nipple-Fort Collins v. City of Fort Collins*, 916 F.3d 792, 798 n.3 (10th Cir. 2019).  A party seeking a TRO "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008). Petitioner "must prove that *all four* of the equitable factors weigh in its favor."  *Sierra Club. v.*

*Bostick,* 539 Fed. Appx 885, 888 (10th Cir. 2013).  However, "[t]he likelihood-of-success and irreparable-harm factors are the most critical."  *People's Trust Fed. Credit Union v. Nat'l Credit Union*, 350 F. Supp. 3d 1129, 1139 (D.N.M. 2018).  "When the government is the party opposing the temporary restraining order, the balance of the equities and public interest merge." *Garcia Domingo v. Castro*, 806 F. Supp. 3d 1246, 1253 (D.N.M.).

### III.    Analysis

For the reasons below, the Court concludes that (A) Petitioner is likely to succeed on the merits of his habeas petition, (B) he will suffer irreparable harm without injunctive relief, and (C) the balance of the equities and public interest weigh in his favor.

#### A.    Petitioner is likely to succeed on the merits of his petition.

Petitioner has established a likelihood of success on the merits of his due process claim.[1] Petitioner contends that his redetention, without notice or a hearing, violates his due process rights.  Doc. 2 at 6.  "Courts analyze due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivations of that protected liberty interest accords with the Constitution."  *Domingo*, 806 F. Supp. 3d at 1251–52 (citing *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)).

---

[1]Petitioner also brings a substantive due process challenge to his detention, arguing that the Government's rationale for detaining him—namely ensuring his appearance at immigration proceedings and protecting the community—do not justify his detention in this case.  Doc. 2 at 14.  Because this TRO releases Petitioner from ICE custody and, therefore, obviates the threat of any imminent deprivation of his substantive due process rights, the Court declines to address Petitioner's substantive due process claim at this preliminary stage of the proceedings.  *See Sahil v. De Anda-Ybarra*, 2026 WL 560216, at 4 (D.N.M.) (declining to assess the petitioner's substantive due process claim where the petitioner established a substantial likelihood of success on the merits of his procedural due process claim).

Here, Petitioner "possesses a protected liberty interest in his continued freedom from physical confinement." Doc. 2 at 7. Courts have recognized that a conditional release from immigration detention gives rise to a protected liberty interest in remaining out of custody. *Domingo*, 806 F. Supp. 3d. at 1252; *cf. Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (noting that parolees have a protected interest in their continued liberty as they have "relied on at least an implicit promise that parole will be revoked only if [they] fail[] to live up to the parole conditions"). Petitioner's prior release from custody enabled him "to do a wide range of things," including "be gainfully employed" and form "enduring attachments of normal life." *Morrissey*, 408 U.S. at 482. Petitioner was released from immigration custody in January 2024, more than two years ago. Doc. 1 at 2–3. He has since obtained employment authorization, established community ties, and complied with the terms of his conditional release. Doc 2 at 8.

Next, the Court concludes Petitioner has demonstrated that there is a substantial likelihood that the Government erroneously deprived him of a protected liberty interest. To determine what process is necessary, the Court considers (1) "the private interest" affected, (2) "the risk of erroneous deprivation of such interest," and (3) "the Government's interest" including "the fiscal and administrative burdens" of additional procedural safeguards. *Domingo*, 806 F. Supp. 3d at 1252 (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

First, as noted above, there is a substantial likelihood that Petitioner can demonstrate that he has a significant private interest in remaining free from detention after being released from ICE custody. Petitioner was free from custody for more than two years before he was redetained. Doc. 1 at 2–3.

Next, there is a substantial likelihood that Petitioner can show a significant risk of erroneous deprivation. Although DHS may revoke release "at any time," 8 U.S.C. § 1226(b),

4

courts require "a material change in circumstances as to whether the noncitizen poses a danger to the community or an unreasonable risk of flight" before such revocation. *Cuya-Priale v. Castro*, 2025 WL 3564145, at * 2 (D.N.M.). Here, ICE made a unilateral decision to redetain Petitioner without a bond hearing, preventing a neutral assessment of his potential danger to the community or flight-risk.

Finally, there is a substantial likelihood that Petitioner can show that the Government's interest in his continued detention without a bond hearing is low. Petitioner has complied with all terms of his conditional release, *Id.*, and the cost of providing a bond determination to Petitioner is minimal. *See Domingo*, 806 F. Supp. 3d. at 1252. For these reasons, Petitioner has demonstrated a likelihood of success on the merits of his procedural due process claim.

**B.    *Petitioner will face irreparable harm without injunctive relief.***

"When an alleged constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Planned Parenthood Ass'n of Utah v. Herbert*, 828 F.3d 1245, 1263 (10th Cir. 2016) (internal quotation marks and citation omitted). Here, Petitioner has demonstrated a substantial likelihood that the Government erroneously deprived him of his protected liberty interest. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Fifth Amendment's Due Process] Clause protects."). As a result, "no further showing of irreparable injury is necessary." *Domingo*, 806 F. Supp. 3d at 1253.

**C.    *The equities and public interest favor relief.***

Finally, any burden on the Government to release Petitioner from custody and hold a pre-deprivation hearing is minimal compared to the harm that Petitioner suffers in improper

detention.  The public interest also weighs in Petitioner's favor as it is "not in the public's interest to allow unexplained detention." *Domingo*, 806 F. Supp. 3d at 1253.  Here, Petitioner has complied with the conditions of his release, has no criminal history, and has timely pursued his asylum claim.  Doc. 1 at 3.  While the Government has an interest in securing Petitioner's appearance at immigration proceedings, detention appears unnecessary to ensure Petitioner's attendance.

## IV.    *Conclusion*

For the reasons above, the Court orders that:

1.  Petitioner's request for a Temporary Restraining Order, Doc. 2, is granted.

2.  The Government must release Petitioner within 24 hours of this order.  Upon release, the Government may not subject Petitioner to post-release monitoring or supervision not in place before his detention.

3.  The Government may not redetain Petitioner unless it demonstrates, by clear and convincing evidence at a pre-deprivation hearing before a neutral arbiter, that Petitioner is a danger or flight risk.

4.  This order shall remain in effect for 28 days for good cause shown.  *See* Fed. R. Civ. P. 65(b)(2).

5.  Given the important constitutional rights at stake for Petitioner, the Court finds that no bond is required.  *See Winnebago Tribe of Nebraska v. Stovall*, 341 F.3d 1202, 1206 (10th Cir. 2003) (providing district courts with "wide discretion under Rule 65(c)" to determine "whether to require security").

6.   The Court reserves ruling on the underlying habeas petition.  The Government must file a

response to the underlying habeas petition no later than ten (10) business days from the

date of this Order.  Petitioner may file a reply within seven (7) days thereafter.

IT IS SO ORDERED.

_/s/ Kenneth J. Gonzales_____
CHIEF UNITED STATES DISTRICT JUDGE

- Please note that this document has been electronically filed.  To verify its authenticity, please refer to the Digital File Stamp on the NEF (Notice of Electronic Filing) accompanying this document.  Electronically filed documents can be found on the court's PACER public access system.

7